| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>ALAN I. WHITE    49858<br>4299 MACARTHUR BLVD. SUITE 212<br>NEWPORT BEACH, CA 92660<br><br>949-752-9001<br>Aiwhitelaw@gmail.com<br><br><br><br>☐ *Movant appearing without an attorney*<br>☒ **Attorney for Movant** | FOR COURT USE ONLY |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**    🔽

| | |
|---|---|
| In re:<br><br>TANIA ELISSIA BATACHE<br><br>       Debtor-in-Possession<br><br><br><br><br><br><br>           Debtor(s). | CASE NO.: 2:16-BK-2107842<br>CHAPTER: 11    🔽 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE:  June 20, 2017<br>TIME: 10:00 am<br>COURTROOM: 1368 |

**Movant:** ROQUE SANTI AND MAFALDA FONTANA

1. **Hearing Location:**

    ☒ 255 East Temple Street, Los Angeles, CA 90012     ☐ 411 West Fourth Street, Santa Ana, CA 92701
    ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101
    ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 1                    **F 4001-1.RFS.RP.MOTION**

4.   When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.   If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.   ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.   ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

a.   ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

b.   ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

c.   ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 5/23/17

LAW OFFICES OF ALAN I. WHITE
Printed name of law firm (if applicable)

ALAN I. WHITE
Printed name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 2                            F 4001-1.RFS.RP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   > *Street address*: 41 Clubhouse Avenue
   > *Unit/suite number*:
   > *City, state, zip code*:Los Angeles, CA 90291

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit  1____ ):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary   bankruptcy petition under chapter ☐ 7  ☒ 11  ☐ 12  ☐ 13 was filed on (*date*)  8/19/16____ .

   b. ☐ An order to convert this case to chapter ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____ .

   c. ☐ A plan, if any, was confirmed on (*date*) _____ .

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

      (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

      (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

      (C) ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

      (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

      (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

      (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

      (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

      (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

      (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                              Page 3                                  **F 4001-1.RFS.RP.MOTION**

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.**  Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion:  (D**eclaration(s) *MUST be signed under penalty of perjury and attached to this motion*)

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit 2____.

d. ☐ Other:

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☒ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☒ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: 5/23/17

LAW OFFICES OF ALAN I. WHITE
_____
Printed name of law firm (if applicable)
ALAN I. WHITE
_____
Printed name of individual Movant or attorney for Movant
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 5                                    F 4001-1.RFS.RP.MOTION

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Roque Santi _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☒  I am the Movant.

   b. ☐  I am employed by Movant as (*state title and capacity*):

   c. ☐  Other (*specify*):

2. a. ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐  Other (*see attached*):

3. The Movant is:

   a. ☒  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 3 _____.

   b. ☒  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit 1 _____.

   c. ☐  Servicing agent authorized to act on behalf of the:
      ☐  Holder.
      ☐  Beneficiary.

   d. ☐  Other (*specify*):

4. a. The address of the Property is:

      *Street address*:41 Clubhouse Avenue
      *Unit/suite no.*:
      *City, state, zip code*:Los Angeles, CA 90291

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
      TD 2014.202402

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

   a. ☐ Debtor's principal residence     b. ☐ Other residence
   c. ☐ Multi-unit residential     d. ☐ Commercial
   e. ☐ Industrial     f. ☐ Vacant land
   g. ☒ Other (*specify*): investment property

6. Nature of the Debtor's interest in the Property:

   a. ☒ Sole owner

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☐ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

   f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.
       The deed was recorded on (*date*) _____.

7. Movant holds a  ☒ deed of trust  ☐ judgment lien  ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 1____.

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
       attached as Exhibit 3____.

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
       trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 661,293.18 | $ 0 | $ 661,293.18 |
| b. | Accrued interest: | $ 158,706.82 | $ 115,035.89 | $ 273,742.71 |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ 22601.18 | $ 22,601.18 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[　　　　　] | $[　　　　] | $[　　　　] |
| g. | TOTAL CLAIM as of (*date*): | $ 820,000 | $ 137,637.07 | $957,637.07 |

   h. ☒ Loan is all due and payable because it matured on (*date*) 10/1/15_____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
has occurred*):

   a. Notice of default recorded on (*date*) 5/27/16____ or ☐ none recorded.

   b. Notice of sale recorded on (*date*) _____ or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) _____ or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☐ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☐ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☐ none recorded.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ 0 _____ for the month of _____ 20___.

    b. Number of payments that have come due and were not made: _____. Total amount: $ Loan matured _____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $ Loan matured _____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d. The fair market value of the Property is $ 2,200,000 _____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☒ A real estate broker or other expert's declaration regarding value is attached as Exhibit 4 _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other (*specify*):

    e. Calculation of equity/equity cushion in Property:

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Ocwen | $ 969309 | $ |
| 2nd deed of trust: | Specialized Loan Servicing LLC | $ 654,258 | $ |
| 3rd deed of trust: | Roque Santi and Mafalda Fontana | $ 820,000 | $ 957,637.07 |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $ 2,581,204 plus post pet int on 1st and 2nd** | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit 1 & 5 and consists of:

        (1) ☐ Preliminary title report.

        (2) ☒ Relevant portions of the Debtor's schedules.

        (3) ☒ Other (*specify*): Debtors Status report, and Order confirming Santi and Fontana prepetition claim

    g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 0 _____ and is _____% of the fair market value of the Property.

    h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ (381,204) _____.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                                    Page 8                                          F 4001-1.RFS.RP.MOTION

i. ☒ Estimated costs of sale: $ 176,000 _____ (estimate based upon 8 _____ % of estimated gross sales price)

j. ☒ The fair market value of the Property is declining because:
Property is in total disrepair, has no proper foundation, being held up by poles, subject to water instrusion and damage, and is not secured

12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
A plan was confirmed on the following date *(if applicable)*: _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                      $
*(For details of type and amount, see Exhibit _____)*

e. Attorneys' fees and costs:                                                                            $
*(For details of type and amount, see Exhibit _____)*

f. Less suspense account or partial paid balance:                                          $[                    ]

                        TOTAL POSTPETITION DELINQUENCY:                           $

g. Future payments due by time of anticipated hearing date *(if applicable)*: _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

n. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____ received on *(date)* _____
$_____ received on *(date)* _____
$_____ received on *(date)* _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan *(attach LBR form F 4001-1.DEC.AGENT.TRUSTEE).*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 9                                    F 4001-1.RFS.RP.MOTION

13. ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (*specify*):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property include:

1. Case name: _____
   Chapter: _____    Case number: _____
   Date filed: _____    Date discharged: _____    Date dismissed: _____
   Relief from stay regarding the Property ☐ was ☐ was not granted.

2. Case name: _____
   Chapter: _____    Case number: _____
   Date filed: _____    Date discharged: _____    Date dismissed: _____
   Relief from stay regarding the Property ☐ was ☐ was not granted.

3. Case name: _____
   Chapter: _____    Case number: _____
   Date filed: _____    Date discharged: _____    Date dismissed: _____
   Relief from stay regarding the Property ☐ was ☐ was not granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 10                          F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 5/12/17 | Roque Santi | |
| Date | Printed name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**DECLARATION OF ROQUE SANTI IN SUPPORT OF MOTION FOR RELIEF FROM STAY**

I Roque Santi hereby declare as follows:

1.      Mafalda Fontana and I are husband and wife and are secured creditors (hereafter "Santi") of the Debtor in this bankruptcy proceeding.  This declaration is submitted in support of our motion for relief from the automatic stay to recommence foreclosure proceeding on the real property located at 41 Clubhouse Avenue, Los Angeles CA 90291 (the "Venice Property") The matters set forth herein are true and correct from my own personal knowledge.

2.      The reconstruction of the Venice property was supposed to be completed by the Debtor by April 1, 2015, the original maturity date for the loan. That clearly was not done, and the Debtor requested and Santi granted a six month extension to further allow the Debtor to complete the reconstruction.  After the six month extension, the Debtor still had not finished the renovation. The Debtor needed substantial additional resources to complete the reconstruction.  I attempted to assist the Debtor in trying to raise additional capital, but the debtor refused my cooperation.

3.      During these bankruptcy proceedings, the debtor sought and obtained an Order allowing her to borrow $150,000 from a Tricia Heath to be used for her ongoing living expenses, and to commence repair to the Venice Property.  She claimed that after she went through the $150,000, Ms. Heath would enter some undefined joint venture with her to finance the balance of the construction.  Based on the Debtor's latest monthly statuts report, to date, the Debtor has not reported that she consummated the loan.  As a consequence, the Venice Property remains in a deteriorating condition which presents an inherent danger of depreciating in value, but also exposes the Debtor to a litigation risk if someone is injured.

4.      On April 28, 2017, I inspected the outside of the Venice Property and took various

LAW OFFICES OF
ALAN I. WHITE

1  pictures. To say the least, the Venice Property is a mess.  Attached hereto as **Exhibit "6"**, are

2  pictures taken by me on April 28, 2017.  First, it is quite clear that no one is living in the

3  property. All electric meters are off, so to the extent that the Debtor recently in opposition to our

4  proof of claim, stated that she resided in the Venice Property, that is not possible.  The foundation

5  is a mess.  There has been no change to the exposed foundation in over a year. There is a

6  dangerous open trench in the driveway which is covered with plywood.  My fear is that someone

7  could get hurt, sues and puts a lien on the property . The exterior of the house has broken areas

8  with large holes.  Clearly, the property is not water tight or sealed and rodents can easily access the

9  inside.  Tarps cover various area of the exterior.  My fear is that these tarps are to protect against

10  the elements but they have been there for over a year.  Plastic tarps cannot hold up to the last

11  winter rainy season.  As the pictures shows, two poles are holding up two balconies.

12       5.    After the loan as extended went into default, the Debtor refused to discuss with me

13  any further extensions or any methods to try to get the Venice Property into a condition that the

14  property would be rebuilt, and marketable.  In my opinion, the value of the Venice Property has

15  decreased substantially in the past year as it just sits there in a dangerous, and unkept manner.  I

16  need the ability to complete the foreclosure that I started prior to the filing of the Petition in order

17  to protect my interest in the property.

18

19  I declare under penalty of perjury under the laws of the United States of America that the

20  foregoing is true and correct, executed at       Maryland  on the  *23* of May  ,

21  2017.

22

23

24      Roque Santi

25

26

27

28

Law Offices of
Alan I. White

1 **DECLARATION OF ALAN I. WHITE IN SUPPORT OF MOTION FOR RELIEF FROM**

2 **STAY**

3

4          I Alan I. White hereby declare as follows:

5          1.          I make this declaration in support of secured creditors Roque Santi and Malfada

6 Fontana's (hereafter "Santi")  motion for relief from the automatic stay to recommence their

7 foreclosure proceeding on the real property located at 41 Clubhouse Avenue, Los Angeles CA

8 90291 (the "Venice Property").  I am an attorney representing Santi, and have been an attorney

9 duly licensed under the laws of the State of California for over 46 years.  The matters set forth

10 herein are true and correct from my own personal knowledge.

11          2.          On February 2, 2017, I sent an email to the Debtors attorney requesting that Santi

12 be given permission to have a contractor or other expert access the Venice Property.  I specifically

13 requested that the Debtor allow such an inspection.  A true and correct copy of my email is

14 attached hereto as Exhibit 7.   I received no response from the Debtor's counsel.

15

16 I declare under penalty of perjury under the laws of the United States of America that the

17 foregoing is true and correct, executed at Newport Beach, California on the 23rd of May  .

18 2017.

19

20                                             _____

21                                             Alan I. White

22

23

24

25

26

27

28

i

DECLARATION OF ALAN I. WHITE IN SUPPORT OF MOTION FOR RELIEF FROM STAY

EXHIBIT "1"



**This page is part of your document - DO NOT DISCARD**

## 20140202402



Pages:
0021

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/27/14 AT 08:00AM**

| | |
|---|---|
| FEES: | 100.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 100.00 |



LEADSHEET



201402270170007

00008904953

008057066

SEQ:
16

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

r15

RECOR    DING REQUESTED BY

WHEN RECORDED MAIL TO

   Recording Requested by:
   Orange Coast Title Company
   of Southern California

Roque Santi and Malfada Fontana

15517 Moravia Court
Derwood, MD  20855-2716

1554384-11



02/27/2014

*20140202402*

SPACE ABOVE THIS LINE FOR RECORDERS USE

APN # 4226-004-020 and 4170-021-002

# DEED OF TRUST
# AND ASSIGNMENT OF RENTS

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 22. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated February 18, 2014, together with all Riders to this document.

(B) "Borrower" is Tania Batache. Borrower is the Trustor under this Security  Instrument. Borrower's mailing address is:  41 Clubhouse Drive in Venice, California 90291 (the "Venice Property"). The Note is also separately secured by a Deed of Trust on the property located at 520 Manhattan Beach Boulevard in Manhattan Beach, California 90266 (the "Manhattan Beach Property").

(C) "Lender" is Roque Santi and Malfada Fontana, husband and wife as community property. Lender is the Beneficiary under this Security Instrument.

(D) "Trustee" is FIDELITY NATIONAL TITLE COMPANY.

(E) "Note" means the promissory note signed by Borrower and dated February 24, 2014.  The Note states that Borrower owes Lender  Six hundred thousand dollars exactly (U.S. $630,000.00) plus interest.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower :  Assignment of Rents and Profits;  Security Agreement and Protection of Lenders' Security Rider.

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" mean those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5 for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(0) "Periodic Payment" means the regularly scheduled amount due for ( t) principal and interest under the Note, plus (2) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Los Angeles, which currently has the address of 41 Clubhouse Drive in Los Angeles, California 90291 and fully described as:

SEE LEGAL DESCRIPTIONS ATTACHED

APN #\4226-004-020

APN# 4170-021-002

SEE EXHIBIT "A"
ATTACHED

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer. Additionally, Lender can require payment due to senior encumbrances, including insurance, in the forms listed above.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such



payment(s) or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: First - interest due under the Note; Second - principal due under the Note; Third - amounts due under Section 3. However, should advances be made under this Deed of Trust, Lender has sole discretion as to the distribution as to how payments shall be applied when received. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Should Lender require, borrower or his successor shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 9. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual

accounting of the Funds as required by RESPA.

Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument  or performing the covenants and agreements secured by this Security Instrument.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust including borrower's covenants to make payments when due. Additionally, borrower shall pay all taxes, assessments, charges, including garbage billings, fines, and impositions attributable to the

Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument  or performing the covenants and agreements secured by this Security Instrument.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in   writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower  is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal  proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender  subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which  can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of  the date on which that notice is given (excluding Deed of Trust liens, which need no notice), Borrower shall satisfy the lien  or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a one-time charge for flood zone determination, certification and tracking services or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further

agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Borrower to provide and deliver evidence of insurance to Lender which is to the satisfaction of Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration. Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Additionally, should Borrower be conducting illegal activity on or about the property, this shall constitute a breach under this security agreement.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, fraudulent, misleading, misrepresentation, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as

such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (1) paying any sums secured by a lien which has priority over this Security Instrument, (2) appearing in court, and (3) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. The parties hereto agree that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a nonrefundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 9 affects Borrower's obligation to pay interest at the rate provided in the Note.

**10.    Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security

Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.
All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, foreclosure fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's Mailing Address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Mailing Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument. Borrower requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to Borrower at the Mailing Address stated herein, unless Borrower has designated another address by Notice to Lender.

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or word of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole  discretion without any obligation to take any action.

16.    **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

17.    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 19, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at it's option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.

18.    **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (i) five business days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, foreclosure fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration.

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made

and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Hazardous Substances.** As used in this Section 20: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (1) that is in violation of any Environmental Law, (2) which creates an Environmental Condition or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (1) any investigation, claim, demand, lawsuit or other action by any  governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of  which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next  sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the  notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or  to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower  Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.
All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (1) that is in violation of any Environmental Law, (2) which creates an Environmental Condition or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory

authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21.  Event of Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement or covenant in this Deed of Trust, or if any Event of Default as described in this Section occurs, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee, Agent of Beneficiary or Agent of Trustee, of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee, Agent of Beneficiary or Agent of Trustee shall cause to be filed for record.  Trustee, Agent of Beneficiary or Agent of Trustee shall be entitled to rely upon the correctness of such notice.

**The following will constitute additional Events of Default under this Section:**

a.  Pursuant to the Escrow Instructions dated February 24, 2014 which are incorporated and restated herein as though more fully set forth at length, the sum of $57,000.00 will be paid to the Borrower at Close of Escrow for purposes of paying down the delinquencies on the first and second Mortgage Loans on the Venice and Manhattan Beach Properties. Borrower's failure to cure these Mortgage Loan delinquencies on both Properties within ten business days after date of funding will constitute an Event of Default.

b.  Pursuant to the Escrow Instructions dated February 24, 2014 which are incorporated and restated herein as though more fully set forth at length, the sum of $60,000.00 will be paid to the Borrower for the purpose of paying the first and second Mortgages on the Manhattan Beach Property for a period of six months after the delinquencies on the first and second Mortgage Loans are cured. Borrower's failure to make those payments within 10 days of their due date will constitute an Event of Default.

c.  Pursuant to the Escrow Instructions dated February 24, 2014 which are incorporated and restated herein as though more fully set forth at length, the sum of $35,000.00 will be held in Escrow to ensure payment of the first and second Mortgage Loans on the Venice Property. Upon written notice from Lender, Escrow will make the payments to the first and second Mortgagees. In the event that Lender is late in notifying Escrow to send the payments, the Lender will be in default and will pay any late charges incurred. M

d.  Pursuant to the Escrow Instructions dated February 24, 2014 which are incorporated and restated herein as though more fully set forth at length, the sum of $30,000.00 ("Reserve Funds") will be held in Escrow for five months after Close of Escrow as reserved funds for the first and second Venice Property Mortgage Loans. As stated in the Note, no interest will accrue on these Reserved Funds as long as the full amount remains undisbursed by Escrow. If any or all of these Reserve Funds are used for the purpose of paying the delinquencies on the First and/or Second Mortgage Loans on the Venice Property, all such funds must be replenished back to the full $30,000.00 within 10 days of withdrawal of any or all of these Reserved Funds. In addition, if any of the Reserved Funds are used to pay the Venice Property Mortgage payment, interest at the Note Rate of 14% will accrue going back to the date of funding. Lender must approve in writing any withdrawal of the Reserve Funds. In addition, the use of any or all of the Reserve Funds will constitute an Event of Default.

e.  Pursuant to the Escrow "Instructions dated February 24, 2014, the sum of $100,000.00 will be disbursed to a Construction Escrow Account (the "Construction Escrow Account"). Additional Escrow Instructions regarding this Construction Escrow Account have been given to Escrow.  In addition, the sum of $70,000.00 is being held by Escrow as a construction cushion (the "Construction Reserve Account") that cannot be released in whole or in part without Lender's written instructions. If there are any funds in the Construction Escrow Account or the Construction Reserve Account remaining as of the Maturity Date of the Note, those funds will be applied to interest and then to principal of the Note that is secured by this Deed of Trust.

f.  Pursuant to the Escrow Instructions dated February 24,2014,the sum of $223,000.00 will be held in Escrow until the Borrower reaches a settlement with the Judgment Creditor (Ronald K. Miyamoto) holding a recorded judgment for $142,000.00 against the Venice Property. If the settlement is less than $223,000.00, the remaining funds will be held in Escrow and used to pay interest-only payments on this Third Mortgage Loan commencing on October 1, 2014 provided that written instructions are given by the Lender to Escrow before any such payment is made. If no written instructions are provided by Lender, then the unused funds will be applied to the Construction Escrow Account.

g.  Borrower agrees that Joseph McKnight will be the listing real estate broker for the sale of the ~~Manhattan~~ *Venice* Beach Property.  If the ~~Manhattan~~ *Ven. Ca* Beach Property is listed for sale or sold at any time during the term of the Note and Deed of Trust and Mr. McKnight is not the listing broker for the Seller, the failure to retain Mr. McKnight for that purpose shall be an Event of Default.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee or Trustee's Agent, without demand on Borrower, shall sell the Property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as Trustee or Beneficiary may determine at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee, or Trustee's Agent may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including  Borrower, Trustee or Beneficiary as herein defined, may purchase at such sale. Trustor hereby waives any and all rights expressed or  implied under California Civil Code Section 2924g(b).  All junior lienholders shall be bound by this as well.

If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest.  Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of  the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid.  In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with  the sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid,  with accrued interest at the rate prescribed in the Note; all other sums then secured thereby, and the remainder, if any, to the  person or persons legally entitled thereto.

**22.  The Agreement is Binding.** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devises, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein.  In this Deed of Trust, whenever the contract so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, drapery and drapery rods, landscaping, water tanks, plumbing, machinery, air conditioners, ducts, and the like.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, and if the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24.  Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 55.

**25.  Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

**26.  Multiple Lender Loans:** Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow.

**27. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**28. Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit the information to Lender within 20 days of the date of request. Said information can include, but is not limited to: name of senior lien holder, balance due, payment amount, next due date, address of lien holder, phone number of lien holder, loan number and amounts advanced.

**29. Document Drawing Service.** If a document drawing service has been hired to draw loan documents, Borrower hereby agrees to indemnify and hold Document Drawing Service, its officers, agents and representatives harmless from and against any costs, expense (including, without limitation attorney fees, consulting fees and court costs).

**30. Indemnification.** Borrower hereby agrees to indemnify (as the same are incurred or accrued) and hold Lender and its officers, agents, representatives harmless from and against any cost, expense (including, without limitation attorney fees, consulting fees and court costs), demand, claim or lawsuit arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

**31. Acceptance by Lender of Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**32. Unsecured Portion of Indebtedness.** If any part of the secured indebtedness cannot be lawfully secured by this Deed of Trust, or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in discharge of that portion thereof which is unsecured by this Deed of Trust.

**33. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, and if the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**34. Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 55.

**35. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

**36. Multiple Lender Loans:** Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow.

**37. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

LOS ANGELES, CA  Document:TD 2014.202402

Printed on:11/17/2015 12:28 PM

**38. Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit the information to Lender within 20 days of the date of request. Said information can include, but is not limited to: name of senior lien holder, balance due, payment amount, next due date, address of lien holder, phone number of lien holder, loan number and amounts advanced.

**39. Document Drawing Service.** If a document drawing service has been hired to draw loan documents, Borrower hereby agrees to indemnify and hold Document Drawing Service, its officers, agents and representatives harmless from and against any costs, expense (including, without limitation attorney fees, consulting fees and court costs).

**40. Indemnification.** Borrower hereby agrees to indemnify (as the same are incurred or accrued) and hold Lender and its officers, agents, representatives harmless from and against any cost, expense (including, without limitation attorney fees, consulting fees and court costs), demand, claim or lawsuit arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

**41. Acceptance by Lender of Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**42.    Waiver of Marshalling; Other Waivers.** To the extent permitted by law, Borrower waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Mortgaged Property, (ii) all rights of redemption, valuation.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with the sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid,  with accrued interest at the rate prescribed in the Note; all other sums then secured thereby, and the remainder, if any, to the  person or persons legally entitled thereto.

**43. The Agreement is Binding.** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devises, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the contract so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, drapery and drapery rods, landscaping, water tanks, plumbing, machinery, air conditioners, ducts, and the like.

**44. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.

Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, and if the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**45. Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 55.

**46. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

**47. Multiple Lender Loans:** Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow.

**48. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**49. Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit the information to Lender within 20 days of the date of request. Said information can include, but is not limited to: name of senior lien holder, balance due, payment amount, next due date, address of lien holder, phone number of lien holder, loan number and amounts advanced.

**50. Document Drawing Service.** If a document drawing service has been hired to draw loan documents, Borrower hereby agrees to indemnify and hold Document Drawing Service, its officers, agents and representatives harmless from and against any costs, expense (including, without limitation attorney fees, consulting fees and court costs).

**51. Indemnification.** Borrower hereby agrees to indemnify (as the same are incurred or accrued) and hold Lender and its officers, agents, representatives harmless from and against any cost, expense (including, without limitation attorney fees, consulting fees and court costs), demand, claim or lawsuit arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

**52. Acceptance by Lender of Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**53. Unsecured Portion of Indebtedness.** If any part of the secured indebtedness cannot be lawfully secured by this Deed of Trust, or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in discharge of that portion thereof which is unsecured by this Deed of Trust.

**54. Waiver of Marshalling; Other Waivers.** To the extent permitted by law, Borrower waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Mortgaged Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the Indebtedness and marshalling in the event of foreclosure of the lien created by this Instrument, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of

Branch :O25   User :AVEN                                                                    Title Officer : 11  Order : 1554384

limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument, and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order, including any rights under California Civil Code Sections 2899 and 3433. If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider(s) executed by Borrower and recorded with it.

BORROWER;

Tania Batache

17

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

COUNTY OF ___ORANGE___ } SS

On _2 - 24 - 14_ before me, _CRAIG HAMMONS, NOTARY PUBLIC_
personally appeared _TANIA BATACHC_
NAME(S) OF SIGNER(S)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**CRAIG HAMMONS**
Commission # 1913914
Notary Public - California
Orange County
My Comm. Expires Nov 20, 2014

SIGNATURE OF NOTARY

_CRAIG HAMMONS_

## OPTIONAL

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

CAPACITY CLAIMED BY SIGNER

(INDIVIDUAL)
CORPORATE OFFICER

_____
TITLE(S)
PARTNER(S)
LIMITED OR GENERAL
ATTORNEY-IN-FACT
TRUSTEE(S)
GUARDIAN/CONSERVATOR
OTHER:

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)
_N/A_

DESCRIPTION OF ATTACHED DOCUMENT

_DEED OF TRUST_
TITLE OR TYPE OF DOCUMENT

_15_
NUMBER OF PAGES

_2 - 24 - 14_
DATE OF DOCUMENT

_N/A_
SIGNER(S) OTHER THAN NAMED ABOVE

137-54899-2 / LEMUS

Branch :O25   User :AVEN

Case 2:16-bk-21078-VZ    Doc 120    Filed 05/23/17    Entered 05/23/17 13:26:37    Desc
Main Document    Page 33 of 82    Title Officer : 11  Order : 1554384

Order No. 350-1554384-11

## Exhibit "A"

Parcel 1:

Lot 25 Block 3 of County Club Tract, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 3, Page(s) 76, of Maps, in the Office of the County Recorder of said County.

Parcel 2:

Lot 6 of Block 1, in Tract No. 2622, in the City of Manhattan Beach, County of Los Angeles, State of California, as per Map recorded in Book 32, Page 28 of Maps, in the Office of the County Recorder of Los Angeles County, California.

\q

# PROTECTION OF LENDER'S SECURITY RIDER

NOTICE:        THIS RIDER ADDS A PROVISION TO THE SECURITY INSTRUMENT ALLOWING THE LENDER TO
REQUIRE PAYMENT OF THE LENDER'S ATTORNEYS' FEES IN BANKRUPTCY CASES.

THIS PROTECTION OF LENDER'S SECURITY RIDER is made February 24, 2014, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's note to Roque Santi and (the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at: 41 Clubhouse Drive in Los Angeles, California 90291 and 520 Manhattan Beach Boulevard in Manhattan Beach, California 90266.

AMENDED COVENANT. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PROTECTION OF LENDER'S SECURITY
In addition to the uniform covenant contained in section 8 of the Security Instrument, the following information is added:

8. Protection of Lender's Security. If Lender's interest in the Property is materially affected by any proceeding under the Bankruptcy Laws of the United States, Lender, at Lender's option, may take such action, including seeking relief under the Bankruptcy Laws, and disburse such sums, including reasonable attorneys' fees, as is necessary to protect Lender's interest.

If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or Applicable Law.

Any amounts disbursed by Lender pursuant to this Section 8 with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this Section 8 shall require Lender to incur any expense or take any action hereunder.

By SIGNING BELOW, Borrower accepts and agrees to the terms and covenant contained in this PROTECTION OF LENDER'S SECURITY RIDE

_____
Tahlia Batache

K_RIDER DOC



# RIDER TO DEED OF TRUST
## ASSIGNMENT OF RENTS AND PROFITS
## AND SECURITY AGREEMENT

**THIS RIDER** is made this February 18, 2014 and is incorporated into and shall be deemed to amend and supplement the Deed of Trust of even date given by the undersigned (the "Borrower") to secure Borrower's promissory note to Orange Coast Title, a California corporation, as Trustee for the benefit of Roque Santi and Mafalda Fontana , husband and wife as community property (collectively, "Lender") and covering the Properties described in the Deed of Trust and located at 41 Clubhouse Drive in Los Angeles, California 90291 and 520 Manhattan Beach Boulevard in Manhattan Beach, California 90266

### 1. Assignment of Rents, Revenues and Profits

(a) All of Borrower's interest in any leases, membership contracts, concessions agreements, rental agreements or any other agreements pertaining to the Property now existing or hereafter entered into, all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all unpaid rents, security deposits, prepaid membership fees and dues and other charges (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Lender to be applied by Lender in payment of the principal and interest and all other sums payable on the Note, and of all other sums payable under the Deed of Trust. Prior to the occurrence of any Event of Default; Borrower shall have a license to collect and receive all Rents and Profits, which license shall be terminable at the sole option of Lender, without regard to the adequacy of its security hereunder and without notice to or demand upon Borrower, upon the occurrence of any Event of Default. It is understood and agreed that neither the foregoing Assignment of Rents and Profits to Lender nor the exercise by Lender of any of its rights or remedies under the Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Lender, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Upon the occurrence of any Event of Default, this shall constitute a direction to and full authority to each lessee under any lease and each guarantor of any lease to pay all Rents and Profits to Lender without proof of the default relied upon. Borrower hereby irrevocably authorizes each lessee and guarantor to rely upon and comply with any notice or demand by Lender for the payment to Lender of any Rents and Profits due or to become due.

(b) Borrower shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, debt service on the indebtedness secured hereby, and a reasonable reserve for future expenses, repairs and replacements for the Property, before using the Rents and Profits for Borrower's personal use or any other purpose not for the direct benefit of the Property.

### 2. Security Agreement
This Deed of Trust is intended to be a security agreement pursuant to the California Uniform Commercial Code for:

(a) any and all items of personal property specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the California Uniform Commercial Code and which are not in this Deed of Trust effectively made part of the real property, including, without limitation, Borrower's interest in all building materials, fixtures, equipment and machinery incorporated or to be incorporated into improvements constructed and to be constructed on the Property together with all interest of the Borrower in all personal property, appliances, equipment and cost of goods now or hereafter owned or possessed by Borrower located upon, in, or about or used in connection with the Property, including, without limitation, any and all personal property necessary for the operation and maintenance of any business located on the property, together with all increases, substitutes, replacements, proceeds and products thereof and additions and accessions thereto, all rents, issues and profits due or to become due Borrower from or pertaining to said real property, Borrower's interest in any monies deposited by or on behalf of Borrower with any city, county, public body, utility or agency for the installation or as security for the installation of any utility pertaining to the Property, all rights to the use of any trade name, trademark or service mark now or hereafter associated with the business or businesses conducted on said premises (subject, however, to any franchise or license agreements relating thereto) together with all rights of borrower under any policy or policies of insurance covering the foregoing property and all proceeds, loss payments and premium refunds which may be payable with respect to such insurance policies or any other insurance policies insuring said real or personal property and the proceeds of any involuntary disposition, including without limitation any tort judgment proceeds; and

(b) any and all items of property specified above as part of the Property which, under Applicable Law, constitute fixtures and may be subject to a security interest under Section 9334 and/or 9604 California Uniform Commercial Code.

2

Borrower hereby grants Lender a security interest in said property, all of which is referred to in this Deed of Trust as "Personal Property," and in all additions thereto, substitutions therefor and proceeds thereof, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Deed of Trust, which shall be a paramount and superior lien on all such Personal Property at all times. Borrower agrees to execute and deliver financing and continuation statements covering the Personal Property from time to time and in such form as Lender may require to perfect and continue the perfection of Lender's lien or security interest with respect to the Personal Property. Borrower shall pay all costs of filing such statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Upon the occurrence of any default of Borrower hereunder, Lender shall have the rights and remedies of a secured party under The California Uniform Commercial Code, including, Section 9604 thereof, as well as all other rights and remedies available at law or in equity.

Notwithstanding anything to the contrary contained in this Paragraph 2, Borrower may from time to time replace items of personal property and fixtures constituting a part of the Property, provided that:

(1) the replacements for such items of personal property or fixtures are of equivalent value and quality;

(2) Borrower has good and clear title to such replacement property free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingents or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors or any third parties in or to such replacement property have been expressly subordinated at no cost to Lender to the lien of the Deed of Trust in a manner satisfactory to Lender; and

(3) at the option of Lender, Borrower provides at no cost to Lender a satisfactory opinion of counsel to the effect that the Deed of Trust constitutes a valid and subsisting first lien on and security interest in such replacement property and is not subject to being subordinated or the priority thereof affected under any applicable law, including, but not limited to, the provisions of California Commercial Code Sections 9334 and/or 9604.

**IN WITNESS WHEREOF,** Borrowers have executed this Rider as of the date first above written.

Borrower

*[signature]*

Tania Batache

ASSRENT1.DOC

EXHIBIT "2"

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Tania Elissia Batache** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an
amended filing

## Official Form 106Sum
## Summary of Your Assets and Liabilities and Certain Statistical Information          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

**Part 1:    Summarize Your Assets**

| | | | Your assets |
|---|---|---|---|
| | | | Value of what you own |
| 1. | Schedule A/B: Property (Official Form 106A/B) | | |
| | 1a. Copy line 55, Total real estate, from Schedule A/B.......... | $ | 6,600,000.00 |
| | 1b. Copy line 62, Total personal property, from Schedule A/B.... | $ | 17,820.40 |
| | 1c. Copy line 63, Total of all property on Schedule A/B.......... | $ | 6,617,820.40 |

**Part 2:    Summarize Your Liabilities**

| | | | Your liabilities |
|---|---|---|---|
| | | | Amount you owe |
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D) | | |
| | 2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D* .. | $ | 3,743,246.33 |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F) | | |
| | 3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*............................. | $ | 0.00 |
| | 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*..................... | $ | 242,132.81 |
| | Your total liabilities | $ | 3,985,379.14 |

**Part 3:    Summarize Your Income and Expenses**

| | | | |
|---|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I) | | |
| | Copy your combined monthly income from line 12 of *Schedule I* ............................ | $ | 812.50 |
| 5. | *Schedule J: Your Expenses* (Official Form 106J) | | |
| | Copy your monthly expenses from line 22c of *Schedule J*.................... | $ | 13,402.62 |

**Part 4:    Answer These Questions for Administrative and Statistical Records**

6.  **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ■ Yes

7.  **What kind of debt do you have?**

   ■ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family  or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Tania Elissia Batache** |
| | First Name         Middle Name         Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name         Middle Name         Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes. Where is the property?

1.1

**41 Clubhouse Ave.**
Street address, if available, or other description

**Venice          CA     90291-0000**
City          State     ZIP Code

**Los Angeles**
County

**What is the property?** Check all that apply.

☐ Single-family home
■ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $3,500,000.00 | $3,500,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Tania Elissia Batache | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|
| **2.1** Chase Bank<br>Creditor's Name<br><br>PO Box 78035<br>Phoenix, AZ 85062<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br>**520 Manhattan Beach Blvd. Manhattan Beach, CA 90266  Los Angeles County**<br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply.<br>■ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) | $502,550.89 | $3,100,000.00 | $0.00 |

**Who owes the debt?** Check one.

■ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt

Date debt was incurred                Last 4 digits of account number    6297

| | | | | |
|---|---|---|---|---|
| **2.2** Ocwen Loan Servicing<br>Creditor's Name<br><br>PO Box 24738<br>West Palm Beach, FL 33416<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br>**41 Clubhouse Ave. Venice, CA 90291  Los Angeles County**<br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed<br>Nature of lien. Check all that apply.<br>■ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) | $969,309.50 | $3,500,000.00 | $0.00 |

**Who owes the debt?** Check one.

■ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt

Date debt was incurred                Last 4 digits of account number    7382

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor 1  **Tania Elissia Batache**
First Name    Middle Name    Last Name

Case number (if know)

---

**2.3  Roque Santi & Malfada Fontana**
Creditor's Name

c/o Specialized Default Services
17100 Gillette Ave.
Irvine, CA 92614
Number, Street, City, State & Zip Code

Describe the property that secures the claim:   $806,000.00   $3,500,000.00   $0.00

**Cross Collateralized by 2 properties:**
**1) 41 Clubhouse Ave. Venice, CA 90291  Los Angeles County**
**2) 520 Manhattan Beach Blvd. Manhattan Beach, CA 90266**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

Nature of lien. Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Who owes the debt? Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred  **02/27/2014**   Last 4 digits of account number

---

**2.4  Shellpoint Mortgage**
Creditor's Name

PO Box 740039
Cincinnati, OH 45274
Number, Street, City, State & Zip Code

Describe the property that secures the claim:   $811,127.64   $3,100,000.00   $0.00

**520 Manhattan Beach Blvd. Manhattan Beach, CA 90266  Los Angeles County**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Who owes the debt? Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred    Last 4 digits of account number  **0560**

---

**2.5  Specialized Loan Servicing LLC**
Creditor's Name

P.O Box 105219
Atlanta, GA 30348
Number, Street, City, State & Zip Code

Describe the property that secures the claim:   $654,258.30   $3,500,000.00   $0.00

**41 Clubhouse Ave. Venice, CA 90291  Los Angeles County**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Who owes the debt? Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

---

Official Form 106D    Additional Page of Schedule D: Creditors Who Have Claims Secured by Property    page 2 of 3

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

EXHIBIT "3"

# PROMISSORY NOTE SECURED BY DEED OF TRUST
## (This Note contains an Acceleration Clause)
## NON-AMORTIZING BALLOON PAYMENT NOTE

Property Addresses: 41 Clubhouse Drive  Los Angeles,  California 90291 ("Venice Property")
520 Manhattan Beach Boulevard , Manhattan Beach, California 90266
("Manhattan Beach Property")

**Loan Amount: $630,000.00**          Los Angeles, California          **February 24, 2014**

In installments as herein stated, for value received, the undersigned Borrower, Tania Batache ("Borrower"), promises to pay to Roque Santi and Mafalda Fontana, husband and wife as community property (collectively, the "Beneficiary") or order, at a place that may be designated by the Beneficiary, the sum of $630,000.00 dollars exactly with interest from the date of funding on the unpaid principal at the rate of 14.00% percent  per annum, payable in six interest-only installments of $7,000.00 each, beginning on 10/01/2014, and continuing MONTHLY ON THE FIRST DAY OF EACH MONTH thereafter until 04/01/2015 ("Maturity Date"), at which time all sums of principal,  six months of interest then remaining unpaid and any fees totaling $672,000.00 shall be due and payable in full. Interest shall be calculated on a 360 day year and on an ordinary annuity calculation basis; provided, however, that no interest will be charged on the sum of $30,000.00 that is disbursed to Escrow on the date of funding as a reserve for payment of the two senior liens on the Venice Property ("Disbursed Funds"). No interest will be charged on the Disbursed Funds unless the Disbursed Funds are used for such payments at which point the entire sum of $30,000.00 will earn interest at 14.00% per annum beginning on the date of funding. At the option of the Beneficiary, each payment shall be credited  first to interest then due, then on late charges, then on advances, then on fees and the remainder on principal; and  interest shall thereupon cease upon the full principal so credited.

**Default of payment.** Upon default in any payment of any installment, or upon the occurrence of any Event of Default in the Deed of Trust which secures this Note,  then the balance of this obligation shall become due immediately at the option of the Beneficiary hereof. Principal and interest shall be payable in lawful money of the United States of America. Except where federal law is applicable, this Note shall be construed and enforceable according to the laws  of the State of California for all purposes and any terms herein inconsistent therewith are hereby modified to conform  to California law at the time of signing of these loan documents. Time is of the essence for each and every obligation under  this Note.

---

**THE FOLLOWING PROVISIONS MAY RESULT IN THE COMPOUNDING OF INTEREST ON YOUR LOAN**

At the option of the Beneficiary, if any payment should be insufficient to pay the interest then due, the balance of interest remaining shall be added to principal and will bear interest at the Note rate as the principal.

At the option of the Beneficiary, if any principal and/or interest installments, late charges, advances and/or costs should be repaid through or by any forbearance, bankruptcy plan or similar repayment plan or foreclosure, the total sum of these amounts will bear interest at the Note rate from the date due or advanced until the date repaid.

---

If this Note is not paid when due, the Borrower(s) promise to pay, in addition to the principal and interest due under this Note, all costs of collection and any reasonable attorneys' fees incurred by the Beneficiary thereof on account of such collection, whether or not suit is filed hereon. The Borrower consents to renewals, replacements, and extensions of time for payment hereof before, at, or after  the Maturity Date; consents to the acceptance of security for this Note and waives  demand, protest and any applicable statute of limitations. Advances shall bear interest at the interest rate stated in the  note or the Default interest, whichever is higher, from date of advance until date paid in full.

**Payment late charge.** If any installment due hereunder is delinquent more than 10 days, the Borrower to this Note agrees to pay a late charge on each installment of 20.00% of the delinquent payment. All late charges are to be paid immediately on demand.

**Balloon Payment and Late Charge.** In addition, if any Balloon Payment is delinquent more than 10 days after the Maturity Date, the Borrower will be charged two monthly late charges plus an additional monthly late charge for each month the Balloon Payment remains late. The Borrower agrees to pay a late charge equivalent to the maximum late charge which could be assessed on the largest single regular installment due under this Note. This late charge on the Balloon Payment is to continue to be assessed for each subsequent period of time equal to the regular installment period under this Note until the Balloon Payment and all other fees, interest and charges due under this Note are paid in full, whichever is greater and whatever the law allows. **Pursuant to California Civil Code Section 2966, the Beneficiary will give written notice to the Borrower at least 90 days and no more than 150 days before any Balloon Payment is due.**

**Return check charge.** Borrower and Beneficiary agree that it would be difficult to determine the actual damages to the Beneficiary or Beneficiary's agent for the return of an unpaid check provided by Borrower. It is hereby agreed that Borrower will pay the sum equal to 5% of the amount returned or $25.00, whichever is greater. However, in any event the maximum charge for an unpaid check is not to exceed the sum of $35.00. This amount is in lieu of any statutory monetary penalty, if any; however, Beneficiary does not waive any other rights that may be awarded under any statute. Should Borrower have two or more returned checks, for any reason, during the life of the loan, Beneficiary may demand that Borrower make payments in the form of cash, cashiers check or money order.

**Right to assign.** The holder of this Note shall have the right to sell, assign, or otherwise transfer, either in part or in its entirety, this Note, the Deed of Trust, and other instruments evidencing or securing the indebtedness of this Note to one or more Investors without Borrower's consent.

**Prepayment penalty.** The principal and accrued interest on this Loan may be prepaid in whole or in part at any time without penalty.

**Default interest.** Should Borrower default on any terms and conditions of this loan, Borrower shall pay a default interest rate in the amount 3.00% per annum, in addition to the current rate of 14.00%, based on the principal balance and on all outstanding advances and advances to be made after default has occurred. Default interest shall commence as of the date of the default and shall continue until such time default has been cured or loan has been paid off.

**Advance Fees.** For any advances, other than those specified in the escrow instructions, made to senior encumbrances and/or obligations to protect the Beneficiary's interest in this Note, there will be an advancing fee equal to three (3%) of the amount so advanced subject with a minimum fee of fifty dollars ($50) per advance (per lender). Advances will bear interest at the same rate that is charged on the principal of this Note from the date of advancement to such date when all monies are paid in full in the form of cash and/or certified funds. ALL ADVANCES TO BE REPAID AT NOTE RATE OR DEFAULT INTEREST RATE, WHICHEVER ONE IS HIGHER, FROM DATE OF ADVANCE UNTIL DATE FUNDS ARE RECEIVED BY BENEFICIARY.

**Binding.** This Note and all of the covenants, promises and agreements contained in it shall be binding on and insure to the benefit of the respective legal and personal representatives, devisees, heirs, successors, and assigns of the Borrower and the Beneficiary.

**Acceleration clause.** This Note is secured by two Third Deeds of Trust of even date herewith, each of which contains the following provision:

**In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.**

This Note is secured by a Third Deed of Trust on the Venice Property and the Manhattan Beach Property to Orange Coast Title, a California corporation, as Trustee.

Borrower _____

Tania Batache

Date _02-24-2014_

NOTE-2.DOC

**Page 2 of 2**

# LOAN MODIFICATION AGREEMENT

WHEN RECORDED MAIL TO

RECORDING REQUESTED BY:

ROQUE SANTI AND
MALFADA FONTANA
11517 MORAVIA COURT
DERWOOD. MD 20855-2716

_____ [Space Above This Line For Recording Data] _____
**APN 4226-004-020 and 4170-021-002**

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 16th day of March, 2015, between Tania Batache ("Borrower") and Roque Santi and Mafalda Fontana, husband and wife as community property ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust (the "Security Instrument") dated February 18, 2014 and recorded February 27, 2014 as Instrument Number 20140202402 in the Office of County Recorder of Los Angeles County and (2) the Note, bearing the date of February 24, 2014 and secured by the Security Instrument, which covers the real property described in the Security Instrument and defined therein as the "Venice Property and Manhattan Beach Property", located at

41 Clubhouse Drive in Venice, California 90291 (the "Venice Property") and 520 Manhattan Beach boulevard in Manhattan Beach, California 90266 (the "Manhattan Beach Property"),

the real property described being set forth as follows:

Parcel 1:
Lot 25 Block 3 of County Club Tract, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 3, Page 76 of Maps, in the Office of the County Recorder of said County.

Parcel 2:
Lot 6 of Block 1, in Tract No. 2622, in the city of Manhattan Beach, County of Los Angeles, State of California, as per Map recorded in Book 32, Page 28 of Maps, in the Office of the County Recorder of Los Angeles County, California.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  Whereas the original Maturity Date of April 1, 2015 as stated within the original Note dated February 24, 2014 is herein Amended to be extended to October 1, 2015 at which time all sums of principal and interest will become due and payable in full.

2.  As of April 1, 2015, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $661,293.18 dollars, consisting of the unpaid amount(s) loaned to Borrower by Lender and the Extension Fee (defined below)with monthly compounded interest from April 1, 2015 at the rate of 14.00% per annum and due at maturity. Interest shall be calculated on a 360 day year and on an ordinary annuity calculation basis. In consideration of the mutual promises and agreements herein, Borrower agrees to pay 2% of the UPB or $12,966.53 ("Extension Fee") for Lender's extension of the maturity date. The Extension Fee has been added to the UPB and due upon payoff by Borrower.

3.  Joseph McKnight is retained as the listing real estate broker for the sale of the Venice Property for a period

of 6 months beginning on the day the Venice Property is contractually listed.

3.  As additional consideration for Lender's agreeing to this Loan Modification. Lender shall receive the following:

2% of the sales price if the home is sold for an amount ranging from $3,100,000.00 up to $3,600,000.00
5% of the sales price if the home is sold for an amount of $3,600,001.00 and above.

These amounts are not to be considered as part of the listing commissions received by Joseph McKnight.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.    The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void. as of the date specified in paragraph No. 1 above:

    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

    (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)    In further consideration of the accommodation and modification agreed to by Lender, Borrower hereby releases, acquits and forever discharges Lender and its principals, agents, officers, directors, successor and assigns of and from any and all claims, causes of action, in law or equity, suits, debts, promises, liabilities, damages, losses, and expenses of any nature in existence as of the execution of this letter, known or unknown, fixed or contingent, which Borrower may have or

acquire against Lender based on or arising out of the Note, the Agreement, or Security Documents.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

_____ (Seal)
                                        -Lender

By: ROQUE SANTi

_____
Date of Lender's Signature

_____ (Seal)  04.01. 2015
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ _____ [Space Below This Line For Acknowledgments] _____

EXHIBIT "4"

**DECLARATION OF JOE MCKNIGHT IN SUPPORT OF MOTION FOR RELIEF FROM STAY**

I Joe McKnight hereby declare as follows:

1.      I make this declaration in support of secured creditors Roque Santi and Maifada Fontana's (hereafter "Santi") motion for relief from the automatic stay to recommence their foreclosure proceeding on the real property located at 41 Clubhouse Avenue, Los Angeles CA 90291 (the "Venice Property"). The matters set forth herein are true and correct from my own personal knowledge.

2.      I am a principal, and a broker for Pelican Capital Group LLC, a real estate redevelopment company. I have had a California real estate brokers license for seven years. I went to law school and after graduation, managed real estate litigation throughout the country. Further, I managed and oversaw more than 250 real estate transactions and provided over $10 million in renovation financing as the lender. I am now an agent with Coldwell Banker while also acting as Principal for Pelican Capital Group. Pelican has redeveloped more than 15 properties in the last 24 months. I am extremely familiar and knowledgeable about remodeling and marketing real property. I am extremely familiar with what an investor who might be interested in acquiring the Venice Property would be looking for by way of the price to acquire the property, and the cost of the extreme amount of reconstruction that would be required. To acquire this property is high risk for an investor because of the many unknowns about the property.

3.      My first contact with the debtor was in February 2014. The debtor was looking for a loan to renovate a property she owned in Venice, California. I introduced the debtor to Santi and arranged the loan that was entered on or about February 24, 2016. The loan was due in full by April 1, 2015.

4.      The renovation of the Venice Property was supposed to be completed by April 1, 2015, the maturity date for the loan. That clearly was not done, and the Debtor requested and Santi granted a six month extension to further allow the Debtor to complete the renovation. After the six

1  month extension, the Debtor still had not finished the renovation. The Debtor needed substantial

2  additional resources to complete the reconstruction. I attempted to assist the debtor in trying to

3  raise additional capital, but the Debtor refused my cooperation.

4        5.      I have been involved in the Venice Property for over three years. To my personal

5  knowledge, the Debtor has had about five different contractors look at and work on the job—they

6  have all quit. This information is known to me because of conversations I have had with the

7  Debtor and some conversations with the contractors. Since 2015, the property has a dirt

8  foundation as the Debtor removed the concrete that has covered the garage and the unit on the first

9  floor. The exterior wall was being supported by support beams.

10       6.      After the Debtor's failure to pay off the Santi loan with the six month extension, I

11 attempted to work with the Debtor to get another extension on the Santi loan and also to get a new

12 contractor to finish the renovation. A proposed contractor met with the Debtor and told me that he

13 would not agree to get involved in the renovation unless I acted as his main contact since he would

14 not deal directly with the Debtor.

15       7.      In December of 2015, after the maturity date of the Santi loan, the Debtor tried to

16 refinance the Venice Property with short term lenders. I was working directly with the Debtor to

17 attempt to find investors. None had interest. I then tried to work with the Debtor and Santi to

18 come to some form of an agreement to finish the renovation, but the Debtor simply "went dark"—

19 she refused to communicate with myself or Santi. As a result, Santi commenced foreclosure

20 proceedings which now have been stayed by the bankruptcy.

21       8.      On or about April 28, 2017, Santi inspected the outside of the Venice Property and

22 took various pictures. Those pictures have been attached to the Santi declaration. I have reviewed

23 those pictures and the pictures reflect that the Venice Property has not had any improvements

24 since the last time I visited the property. The property has a dirt foundation as the debtor had

25 removed the concrete that covered the garage and the unit on the first floor. Additionally, the

26 exterior balconies are being supported by support beams. The property is not secured. The

27 property is inherently in a dangerous condition and in my opinion constitutes a danger to third

28

LAW OFFICES OF
ALAN L. WHITE

1  parties. The property has simply sat unprotected during one of the worst rainy seasons in

2  California history.

3      9.      In my opinion, the market value of the Venice Property has substantially

4  deteriorated during the past eight months or so with the huge rainy season that occurred and with

5  the property still being unprotected.   There also may be foundational issues that now exist. I have

6  reviewed the multiple listing book for the Venice area and determined that a reasonable valuation

7  of the property in its current condition would be about $2,200,000. Further, it is likely that only a

8  professional investor would have any interest in purchasing the property due to its condition. This

9  would also likely mitigate against the value of the property. Professional investors recognize that

10  they might be buying a property which has multiple unknown risks that sometimes are only

11  discovered upon commenced of the reconstruction project.

12  I declare under penalty of perjury under the laws of the United States of America that the

13  foregoing is true and correct, executed at Newport Beach, California on the $23$ of May ,

14  2017.

15

16

17              Joe McKnight

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
ALAN L. WHITE

DECLARATION OF JOE MCKNIGHT IN SUPPORT OF MOTION FOR RELIEF FROM STAY

EXHIBIT "5"

1  Anthony O. Egbase (SBN: 181721)
   Kevin Tang (SBN: 291051)
2  Crystle J. Lindsey (SBN: 281944)
   **A.O.E LAW & ASSOCIATES, A Professional Law Corporation**
3  350 South Figueroa Street, Suite 189
   Los Angeles, California 90071
4  Tel: (213) 620-7070; Fax: (213)-620-1200
   Email: info@aoelaw.com
5
   Proposed Counsel for Debtor and Debtor-in-possession
6  *Tania Elissia Batache*

7              **UNITED STATES BANKRUPTCY COURT**

8      **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

9

| *In re:* | Case No. 2:16-BK-21078-VZ |
|---|---|
| **TANIA ELISSIA BATACHE** | Chapter 11 |
| Debtor-in-possession. | **DEBTOR'S FIRST STATUS CONFERENCE REPORT** |
| | <u>Status Conference Hearing</u><br>Date: October 13, 2016<br>Time: 9:30 a.m.<br>Place: Courtroom 1368<br>Roybal Federal Building<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

19

20  **TO THE HONORABLE VINCENT ZURZOLO, UNITED STATES BANKRUPTCY**

21  **JUDGE, OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS,**

22  **TWENTY LARGESTED UNSECURED CREDITORS AND ALL PARTIES IN**

23  **INTEREST:**

24
25      The above-captioned debtor and debtor-in-possession, Tania Ellisia Batache

26  (hereinafter "Debtor"), by and through her attorney of record herein, A.O.E. Law &

27  Associates (hereinafter "Debtor's counsel"), hereby files her First Status Conference

28  Report, and set forth the following fact.

## I.   DEBTOR'S MAJOR ASSETS & LIABILITIES

Debtor is a resident of the State of California, County of Los Angeles.   Debtor is currently unemployed and her only current source of income is social security income. Debtor major assets are her two real properties.   Debtor's major liabilities are the deeds of trusts secured by both properties.

Debtor's first real property is located at 520 Manhattan Beach Blvd., Manhattan Beach, CA 90266 ("Manhattan Beach property").   Debtor purchased the Manhattan Beach property in 2004 for approximately $1,300,000.00.   The Manhattan Beach Property is encumbered by a first deed of trust held by the Bank of New York Mellon, serviced by ShellPoint Mortgage, in the approximate amount of $811,127.00.   The Manhattan Beach Property is also encumbered by a second deed of trust held by Chase Bank, N.A. in the approximate amount of $502,550.00. The Manhattan Beach Property has an approximate value of $ 3,100,000.00.

Debtor's second real property is located at 41 Clubhouse Avenue, Los Angeles, CA 90291 ("Venice Property").   The Venice property is encumbered by a first deed of trust held by serviced by Ocwen Loan Servicing LLC, in the approximate amount of $969,309.00.   The Venice property is also encumbered by a second deed of trust held by Specialized Loan Servicing, LLC in the approximate amount of $654,258.00.   The Venice property has an approximate value of $3,500,000.00.   On July 5, 2016 the first deed of trust holder recorded a Notice of Default in the amount of $50,991.61 on the Venice property.

## II.   EVENTS LEADING TO BANKRUPTCY

In or around 2002, Debtor was involved in an automobile accident. As a result of the automobile accident, Debtor went under major surgery in 2006 and is currently still

battling health problems as a result.  In or around 2008, Debtor was a party to state

court action related to the automobile accident.  Judgment was entered against Debtor

and she was ordered to pay approximately $150,000.00 in damages by the court.  As a

result, the judgment creditor recorded a lien on both of Debtor's properties in 2013,

which Debtor discovered when she attempted to refinance the properties.

As a result of the judgment lien, Debtor was forced to take out a third deed of

trust in the approximate amount of $630,000.00, which included built in high points, fees

and payment reserves, of which $30,000 was returned to lender. Debtor took out this

third deed of trust in order to pay off the judgment lien with accrued interest.  Debtor

also secured the third deed of trust in order to pay for the necessary repairs to the

Venice Property.

The third deed of trust is held by Roque Santi and Malfada Fontana and is cross

collateralized on both Manhattan Beach Property and the Venice Property.  Additionally,

as a term of their agreement, Debtor and third deed of trust lienholders agreed that

Debtor would be obligated to use Joe McKnight as the listing broker.  On May 27, 2016,

the holders of the third deed of trust recorded Notice of Default in the amount of

$804,022.47 on both the Manhattan Beach property and Venice property.

## III.    DEBTOR'S POST-PETITION OPERATIONS & GOALS IN BANKRUPTCY

Debtor wishes to reorganize her debts through chapter 11 bankruptcy and her

goal is to pay off her debts through the sale of her property.  Debtor intends to sell the

Venice property and use the sale proceeds to fund her plan of reorganization and pay

off her debts.  The Venice property currently requires major repairs, including

completion of the ground floor, completion of the associated top floors, and finishing of

the exterior of the property.  The estimated cost of the repairs to the Venice property is

1  05.17Alan I. White, State Bar No. 49858
   LAW OFFICES OF ALAN I. WHITE
2  4299 MacArthur Blvd., Suite 212
   Newport Beach, California 92660
3  Telephone: (949) 752-9001
   Facsimile: (949) 752-9007
4
   Attorneys for Creditor
5  Roque Santi and Mafalda Fontana
6

```
┌─────────────────────────────────┐
│        FILED & ENTERED          │
│  ┌───────────────────────────┐  │
│  │        APR 07 2017        │  │
│  └───────────────────────────┘  │
│   CLERK U.S. BANKRUPTCY COURT   │
│   Central District of California│
│   BY carranza  DEPUTY CLERK     │
└─────────────────────────────────┘
```

7              UNITED STATES BANKRUPTCY COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                    LOS ANGELES DIVISION

10

11 IN RE                          )  Chapter 11 Proceeding
                                  )
12                                )  Case No.: **2:16-BK-21078-VZ**
                                  )
13 **TANIA ELISSIA BATACHE**      )  ORDER APPROVING CLAIM OF ROQUE
                                  )
14         Debtor                 )  SANTI AND MAFALDA FONTANA
                                  )
15                                )
                                  )  **Hearing Date and Time**
16                                )
                                  )  Date: March 28, 2017
17                                )  Time: 11:00 am
                                  )  Courtroom:  1368
18                                )  Place:  255 E. Temple St. Los Angeles, CA 90012
                                  )
19 ─────────────────────────────  )

20

21        On December 9, 2016, Secured Creditors Roque Santi and Mafalda Fontana

22 (collectively "Santi") filed a proof of claim.  On or about February 24, 2017, the Debtor

23 filed an objection to the claim.   On or about March 13, 2017, Santi filed opposition to the

24 objection.

25

26

27

28
                                    1

Based on the moving papers, the opposition, the arguments from counsel and based on the Stipulation of the parties set forth on the record at the hearing, and good cause appearing, therefore:

**IT IS HEREBY ORDERED THAT**:

1. The claim filed by Santi is approved. The amount outstanding from the Debtor to Santi as of the date of filing of the Petition is the sum of $820,000 which sum is secured by the real property located at 41 Clubhouse Avenue, Venice, California 90291 (hereafter "Venice Property") and the real property located at 520 Manhattan Beach Boulevard, Manhattan Beach, California 90266.

2. The claim filed by Santi is approved with respect to the contingency claim that Santi is entitled to 2% of the sales price of the Venice Property if it sells for a price between $3.1 million and $3.6 Million and 5% of the sales price if the Venice Property sells for an amount of $3.6 Million and above.

####

Date: April 7, 2017

Vincent P. Zurzolo
United States Bankruptcy Judge

2

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Tania Elissia Batache | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (If known) | | | |

☐ Check if this is an amended filing

## Official Form 106Sum
## Summary of Your Assets and Liabilities and Certain Statistical Information           12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1:    Summarize Your Assets

| | | Your assets<br>Value of what you own |
|---|---|---|
| 1. | **Schedule A/B: Property** (Official Form 106A/B)<br>1a. Copy line 55, Total real estate, from Schedule A/B. | $    6,600,000.00 |
| | 1b. Copy line 62, Total personal property, from Schedule A/B. | $    17,820.40 |
| | 1c. Copy line 63, Total of all property on Schedule A/B. | $    6,617,820.40 |

### Part 2:    Summarize Your Liabilities

| | | Your liabilities<br>Amount you owe |
|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)<br>2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D* | $    3,743,246.33 |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)<br>3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F* | $    0.00 |
| | 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F* | $    242,132.81 |
| | **Your total liabilities** | $    3,985,379.14 |

### Part 3:    Summarize Your Income and Expenses

| | | |
|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I)<br>Copy your combined monthly income from line 12 of *Schedule I* | $    812.50 |
| 5. | *Schedule J: Your Expenses* (Official Form 106J)<br>Copy your monthly expenses from line 22c of *Schedule J* | $    13,402.62 |

### Part 4:    Answer These Questions for Administrative and Statistical Records

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ☑ Yes

7. **What kind of debt do you have?**

   ☑ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

Official Form 106Sum          Summary of Your Assets and Liabilities and Certain Statistical Information          page 1 of 2

Case 2:16-bk-21078-VZ   Doc 1   Filed 08/19/16   Entered 08/19/16 11:55:45   Desc
Main Document      Page 28 of 62

Debtor 1   **Tania Elissia Batache**                                  Case number (if known)
 First Name      Middle Name      Last Name

| 2.3 | **Roque Santi & Malfada Fontana** | Describe the property that secures the claim: | $806,000.00 | $3,500,000.00 | $0.00 |

2.3 **Roque Santi & Malfada Fontana**
Creditor's Name

Describe the property that secures the claim:
**Cross Collateralized by 2 properties:**
**1) 41 Clubhouse Ave. Venice, CA 90291  Los Angeles County**
**2) 520 Manhattan Beach Blvd. Manhattan Beach, CA 90266**

$806,000.00   $3,500,000.00   $0.00

**c/o Specialized Default Services**
**17100 Gillette Ave.**
**Irvine, CA 92614**
Number  Street  City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred   **02/27/2014**            Last 4 digits of account number

---

2.4 **Shellpoint Mortgage**
Creditor's Name

Describe the property that secures the claim:
**520 Manhattan Beach Blvd. Manhattan Beach, CA 90266  Los Angeles County**

$811,127.64   $3,100,000.00   $0.00

**PO Box 740039**
**Cincinnati, OH 45274**
Number  Street  City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred            Last 4 digits of account number   **0580**

---

2.5 **Specialized Loan Servicing LLC**
Creditor's Name

Describe the property that secures the claim:
**41 Clubhouse Ave. Venice, CA 90291  Los Angeles County**

$654,258.30   $3,500,000.00   $0.00

**P.O Box 105219**
**Atlanta, GA 30348**
Number  Street  City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

---

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Tania Elissia Batache** |
| | First Name  Middle Name  Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name  Middle Name  Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes. Where is the property?

---

1.1

**41 Clubhouse Ave.**
Street address, if available, or other description

**Venice**    **CA**    **90291-0000**
City    State    ZIP Code

**Los Angeles**
County

What is the property? Check all that apply

☐ Single-family home
■ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Who has an interest in the property? Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $3,500,000.00 | $3,500,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Tania Elissia Batache** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | |
| (if known) | |

☐ Check if this is an
amended filing

### Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. Do any creditors have claims secured by your property?

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

### Part 1:  List All Secured Claims

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>if any |
|---|---|---|---|---|
| **2.1** **Chase Bank**<br>Creditor's Name<br><br>PO Box 78035<br>Phoenix, AZ 85062<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br>**520 Manhattan Beach Blvd.**<br>**Manhattan Beach, CA 90266  Los**<br>**Angeles County**<br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply.<br>■ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) | $502,550.89 | $3,100,000.00 | $0.00 |
| Who owes the debt? Check one.<br>■ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt | | | | |
| Date debt was incurred | Last 4 digits of account number   6297 | | | |
| **2.2** **Ocwen Loan Servicing**<br>Creditor's Name<br><br>PO Box 24738<br>West Palm Beach, FL<br>33416<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br>**41 Clubhouse Ave. Venice, CA**<br>**90291  Los Angeles County**<br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply.<br>■ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) | $969,309.50 | $3,500,000.00 | $0.00 |
| Who owes the debt? Check one.<br>■ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt | | | | |
| Date debt was incurred | Last 4 digits of account number   7382 | | | |

| | | |
|---|---|---|
| Official Form 106D | Schedule D: Creditors Who Have Claims Secured by Property | page 1 of 3 |

# EXHIBIT "6"

















R65  005720











EXHIBIT "7"

 Gmail

**Alan White <aiwhitelaw@gmail.com>**

---

**Batache**
1 message

---

**Alan White <aiwhitelaw@gmail.com>**                                          Thu, Feb 2, 2017 at 12:07 PM
To: michael@avanesianlaw.com

Mike, consistent with some of our conversation after the court hearing on 1/24, my client would like to get permission to have a contractor or other expert take a look at the Venice property. He wants to see the existing status and get some insight as to the nature of the work that needs to be done. Would your client agree to allow such an inspection? Thanks

--
Alan I. White
LAW OFFICES OF ALAN I. WHITE
4299 MacArthur Blvd., Suite 212
Newport Beach, CA 92660
949-752-9001

CONFIDENTIALITY AND PRIVILEGE NOTICES: If you are a client, this message is a privileged attorney-client communication. This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy or rely in any way on the contents of this email and its attachments. NO DUTIES ARE INTENDED OR CREATED BY THIS COMMUNICATION. If you have not entered into a fee agreement or executed an engagement letter with this firm, the firm DOES NOT represent you as your attorney. You are encouraged to retain counsel of your choice if you desire to do so. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachment are expressly reserved. FAIR DEBT COLLECTION PRACTICES ACT NOTICE: Please be advised that a portion of this firm's practice involves the collection of debts. If you are a debtor, anything you say or communicate by email can be used for that purpose. IRS CIRCULAR 230 REQUIRED NOTICE : U.S. Treasury Regulations require that we inform you as follows: Any U.S. federal tax information contained in this communication (including any attachments) is not intended to be used and cannot be used, for the purpose of (I) avoiding penalties under the Internal Revenue Code or (II) promoting, marketing or recommending to another party any transaction or tax-related matter(s). RECORD RETENTION POLICY NOTICE: Please note that this firm has a policy of destroying all files and records seven (7) years after a matter is closed.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4299 MacArthur Blvd., Suite 212, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 05.23.17 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael Avanesian michael@avanesianlaw.com, michael@ecf.inforuptcy.com;judith@avanesianlaw.com
Matthew R. Clark mclark@rasflaw.com, ras@ecf.courtdrive.com;bkyecf@rasflaw.com
Tony Forberg tonyforberg@mac.com, inbox@forberglaw.com
Merdaud Jafarnia bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 05.23.17 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Vincent P. Zurzolo
Courtroom 1368
255 E Temple St.
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05.23.17 | Cindie D. Ianni | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                    Page 12                    F 4001-1.RFS.RP.MOTION

# PROOF OF SERVICE

## ***Service information continued

**<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:**

Erin M McCartney bankruptcy@zbslaw.com, emccartney@ecf.courtdrive.com

Kelly L Morrison kelly.l.morrison@usdoj.gov

R Gibson Pagter gibson@ppilawyers.com, ecf@ppilawyers.com

David Samuel Shevitz david@shevitzlawfirm.com, shevitzlawfirm@ecf.courtdrive.com

United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

Alan I White aiwhitelaw@gmail.com